UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KESHAWN JENNINGS,<br><br>    Petitioner,<br><br>v.<br><br>ROSS CORRECTIONAL<br>INSTITUTION,<br><br>    Respondent. | Case No. 3:16CV119<br><br>JUDGE SARA LIOI<br><br>Magistrate Judge George J. Limbert<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

On January 12, 2016, Petitioner, Keshawn Jennings ("Petitioner"), pro se, executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with this Court on January 19, 2016. ECF Dkt. #s 1, 1-1. He seeks relief for alleged constitutional violations that occurred during his Lucas County, Ohio Court of Common Pleas convictions for aggravated murder, one count of murder, four counts of felonious assault, one count of attempt to commit murder, and improperly charging a firearm at/or into a habitation. *Id*.; ECF Dkt. #11-1 at 49.

On June 17, 2016, Respondent, Mark Hooks, Warden of Ross Correctional Institution, in Chillicothe, Ohio, filed an Answer/Return of Writ. ECF Dkt. #11. On September 6, 2016, Petitioner filed a Traverse. ECF Dkt. #15.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

## I. SYNOPSIS OF THE FACTS

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999). As set forth by the Ohio Court of Appeals, the facts are:

> This case arises from a murder that occurred on August 9, 2012, at the Moody Manor apartments in Toledo, Ohio. On that night, Naomi Reed was inside her apartment with several others, including her great-grandchildren, K.H. and L.H. At the time of

the murder, the children were sleeping on the floor of the apartment in front of an air conditioner. Awoken by gunshots, K.H. sat up and was shot in the head. L.H. was also shot in the incident. The children were rushed to St. Vincent's hospital. L.H. was treated for a gunshot wound in the chest and abdomen, and was permitted to go home several days later. Tragically, K.H. never regained consciousness and died as a result of the gunshot wound to her head. K.H. was one year old at the time of the shooting.

Two Moody Manor residents, Cassandra Wells and Demetria Johnson, along with Wells' boyfriend, Brandon Lino, witnessed two men flee the scene and make their way into a moving minivan. The witnesses testified that one of the men was wearing a red and white hat, a white tee shirt, black jogging pants, and a black hoodie. The other man was described as wearing a red tee shirt underneath a black hoodie.

Immediately following the shooting, Johnson phoned 911 and an officer from the Toledo Police Department, Paul Marchyck, responded to the scene. Marchyk secured the crime scene and discovered shell casings outside the apartment. Approximately 15 minutes later, another officer, Jason Lenhardt, arrived on the scene to investigate the shooting. By this time, the weather had taken a turn for the worse, and Lenhardt was forced to conduct his investigation under heavy rainfall. While the rainfall did hamper Lenhardt's investigation, he was nonetheless able to recover a bullet from an adjacent apartment, as well as a 9 mm cartridge, fragments of copper jacketing, and multiple shell casings, both 9 mm and .40 caliber. Eventually, two additional 9 mm casings and one .40 caliber casing were retrieved from the scene.

While Lenhardt was conducting his investigation outdoors, detective Scott Smith focused on the interior of the apartment where the victims were located. As he made his way through the apartment, Smith discovered several more bullets and shell casings. Lenhardt also investigated the van that was allegedly used as a getaway vehicle. Inside the van, Lenhardt located a red and black Chicago Bulls hat, a dark blue hoodie, a black hoodie, and traffic citations that were previously issued to appellant. Upon subsequent execution of a search warrant at appellant's house, police recovered another black hooded sweatshirt and a pair of black sweatpants, and a red shirt was seized from appellant after he was interviewed by detectives.

\*\*\*

Following extensive pretrial proceedings, the trial in this case began on June 24, 2013. Multiple witnesses testified at trial, including Moore. In his testimony, Moore indicated that he and his codefendants were members of the Bloods street gang. He acknowledged that he was the driver of the van. Moore also testified that appellant was one of the men responsible for the shooting, which was intended for a man affiliated with a rival gang, the Crips.

ECF Dkt. #11-1 at 217-219; *State v. Jennings*, No. L-13-1178, 2015 WL 223882, at \*11 (Ohio App. 6th Dist. Jan. 16, 2015).

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its September 2012 term, the Lucas County, Ohio Grand Jury indicted Petitioner on: one

count of aggravated murder in violation of Ohio Revised Code ("ORC") §§ 2903.01(C) and (F), with a firearm specification (Count 1); one count of murder in violation of ORC §§ 2903.02(B) and 2929.02, with a firearm specification (Count 2); two counts of attempt to commit aggravated murder in violation of ORC § 2923.02(A) and 2903.01, with firearm specifications (Counts 3 and 5); four counts of felonious assault in violation of ORC § 2903.11(A)(2) (Counts 4, 6, 8, and 10), with firearm specifications; two counts of attempt to commit murder in violation of ORC §§ 2923.02 and 2903.02, with firearm specifications (Counts 7 and 9); and improperly discharging a firearm at/or into a habitation in violation of ORC § 2923.16(A)(1), with a firearm specification (Count 11). ECF Dkt. #11-1 at 5-13. The trial court nolled Counts 3, 5, and 9 at the request of the prosecution. *Id*. at 36.

On July 8, 2013, the trial court issued a journal entry indicating that the jury returned a verdict finding Petitioner guilty of all of the remaining charges in the indictment. ECF Dkt. #11-1 at 49. The court sentenced Petitioner on August 5, 2013 to a total term of life imprisonment with parole eligibility after 40 years. *Id*. at 55. The court explained that it sentenced Petitioner to: life imprisonment with parole eligibility after 30 years on the aggravated murder conviction, with one year mandatory imprisonment on the firearm specification to be served prior to and consecutive to the aggravated murder sentence; 11 years of imprisonment on the attempted murder conviction, with one year mandatory imprisonment on each firearm specification to be served prior to and consecutive with the attempted murder convictions; 8 years of imprisonment on each felonious assault conviction, with one year of mandatory incarceration for each firearm specification, with each to be served prior to and consecutive with each felonious assault conviction. *Id*. at 54. The court ordered that the sentences for the aggravated murder conviction and one of the felonious assault convictions and the firearm specification sentences be served consecutive to each other and the other counts be served concurrently with one another and with the second and fourth counts. *Id*.

**B**.   **Direct Appeal**

On October 15, 2013, Petitioner, through different counsel, filed a notice of appeal and on June 6, 2014, he asserted the following assignments of error in his amended appellate brief:

-3-

> 1. The trial court erred to the prejudice of Mr. Jennings by failing to excuse a sleeping juror in violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.
>
> 2. Trial counsel rendered ineffective assistance of counsel to Mr. Jennings by failing to object to the sleeping juror's presence on the jury in violation of his right to counsel and his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.
>
> 3. The trial court erred to the prejudice of Mr. Jennings by ordering consecutive sentences and by failing to merge all counts as allied offenses, both in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.
>
> 4. The trial court erred to the prejudice of Mr. Jennings when it ordered him to pay unspecified costs, including court appointed fees, without first determining the ability to pay those costs.
>
> 5. The trial court erred to the prejudice of Mr. Jennings when it denied a defense motion to have a complete copy of the prosecutor's file turned over to the court and sealed for appellate review in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.
>
> 6. Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

ECF Dkt. #11-1 at 63, 72-77.  The State of Ohio filed an appellate brief on July 29, 2014. *Id.* at 106-146.  Petitioner filed a reply brief on August 22, 2014.  *Id.* at 149-155.

On January 16, 2015, the Ohio appellate court affirmed in part and reversed in part the trial court's judgment. *Jennings*, 2015 WL 223882, at *11.  The Ohio appellate court reversed and vacated only the trial court's imposition of Petitioner paying the costs for confinement and court-appointed counsel. *Id.*

### C.     Ohio Supreme Court

On February 27, 2015, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #11-1 at 156-158.  In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> Proposition of Law 1: The trial court errored[sic] to the prejudice of appellant by admitting perjured testimony of State's witness and star witness J.T. Moore in violation of Article I, 2, and 16 of the Ohio Constitution; 6th. and 14th. Amendments of U.S. Constitution.

-4-

> Proposition of Law 2: A criminal defendant is denied due process and right to effective assistance of counsel on appeal when appellate counsel fails to raise a[sic] obvious and meritorious identification procedures[sic], and improper police procedures on appeal.
>
> Proposition of Law 3: A criminal defendant is denied due process and the right to effective assistance of counsel on appeal when appellate counsel failed to assign as error according to the N.C.R. report, fingerprint examination is not supported by "peer review" and is unreliable evidence, and unreliable testimony.
>
> Proposition of Law 4: Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

*Id.* at 159-169.

On May 20, 2015, the Supreme Court of Ohio declined jurisdiction over Petitioner's appeal. *State v. Jennings*, 142 Ohio St.3d 1468, 30 N.E.3d 975 (Table)(2015).

### D. Ohio Rule 26(B) Application to Reopen Appeal

On April 8, 2015, Petitioner filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. ECF Dkt. #11-1 at 185-195. Petitioner asserted the following assignments of error:

> 1. Appellant's[sic] were entitled to a Rule 29 motion that was improperly overruled because the State has not shown the transferred intent that is required. And because appellant was arrested without probable cause or warrant for indictment.
>
> 2. Appellant's convictions were against the manifest weight of the evidence.

*Id.* On May 1, 2015, the Ohio appellate court found "no genuine issues of ineffective assistance of appellate counsel" and denied Petitioner's Rule 26(B) application to reopen his appeal. *Id.* at 197-207.

On December 29, 2015, Petitioner pro se filed a notice of appeal and motion for leave to file a delayed appeal to the Supreme Court of Ohio. ECF Dkt. #11-1 at 210-215. On February 24, 2016, the Supreme Court of Ohio denied Petitioner's motion for delayed appeal. *Id.* at 240.

### **III.     28 U.S.C. § 2254 PETITION**

On January 12, 2016, Petitioner, pro se, executed the instant petition for a writ of federal habeas corpus, which was filed in this Court on January 19, 2016. ECF Dkt. #s 1, 1-1. Petitioner raises the following grounds for relief:

> 1. Whether the trial court erred to the prejudice [sic] Mr. Jennings by failing to excuse a sleeping juror violating due process right to 5th, 6th, & 14th Amendment[sic] to U.S. Constitution.
>
>    Supporting facts: Throughout the trial the ttial[sic] court and counsel repeatedly witnessed instances of juror number 5 sleeping during key portions of the trial.[sic] for example: juror sleeping was observed during the testimony of Mark Johnson, Randal Navarro, and Jason Lenhardt whom all testified at least in part on the compilation of State's Exhibit 37 this was a violation of Mr. Jennings' right to due process, effective assistance of counsel and a fair and a fair[sic] and reliable trial as guaranteed under the fifth[sic], Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portion of the Ohio Constitution.
>
> 2. Whether trial counsel rendered inefective[sic] assistance of counsel by failing to object to the sleeping jurors[sic] presence on the jury violating right to counsel, and fair trial 5th, 6th, and 14th amendments to the united[sic] States constitution[sic] and portions of the Ohio Constitution.
>
>    Supporting facts: Trial counsel were certainly aware of the sitution[sic], but did not seek a remedy at trial ro[sic] express dissatisfaction with the trial judge's hankling[sic] of juror. The trial counsel erred in not preserving this issue for review by the court. Counsel's deficient performance prejudiced defendant when he did not object or seek a remedy to juror problems. The trial counsel was ineffective in failing to object and also failing to cite the appropriate constitutional and statutory provisions.
>
> 3. Whether the trial court erred to the prejudice of Mr. Jennings by ordering consecutive sentences and by failing to merge all counts as allied offenses in violation of due process 5th, 6th, and 14th amendments to the U.S. Constitution and Ohio Constitution.
>
>    Supporting facts: The portion of the statute relevant to Mr. Jennings requires the sentencing court find at least two of the offenses were committed as part of one or more courses of conduct and the harm caused so great that no single prison term adequately reflects. It is unclear which factors applied to which defendant. There were no individualized findings to support the trial court's sentencing Mr. Jennings to consecutive sentences.
>
> 4. Whether right to due process violated by 5th, 6th, and 14th amendment[sic] to the U.S. Constitution when court prejudice[sic] Mr. jennings[sic] by denied[sic] motion to have a complete copy of

prosecutor's file turned over to court and sealed for appellate review.

Supporting facts: The prosecutor is required to disclose to a defendant evidence that, if suppressed, would deprive him a fair trial. If such undermine confidence in the out come[sic] of the trial, constitutional error occurs and the conviction must be reversed. In a pre trial [sic] motion defense filed a motion directing a complete copy of the prosecutor's file be made and turned over to the court for review and to be sealed for appellate review, if necessary. The court denying the motion prejudice him his right to due process under the 5th, 6th, and 8th, 14th amendments to the United States constitution[sic], and portions of the Ohio Constitution.

5. Appellant was prejudice[sic] by admitting perjured testimony from State's witness and star witness James T. Moore, in violation of Article[sic] 1, 2, 10, and 16 of the Ohio Constitution and the 6th, and 14th Amendmens of the U.S. Constitution.

   Supporting facts: Detective Quinn lied and said "we had witness statements in regards to the identification of those subjects that we saw in that video that also saw these same individuals hopping the fence. Tr. Trans. Pg. 1342 L.25 and Pg. 1343 L. 1-3. Moreover, J.T. Moore lied all throughout the trial, he even said he would do whatever it takes not to go back to jail for the rest of his life. Tr. Tran. Pg. 1067 lines 1 thru 25, and Tr. Trans Pg. 1068 lines 1 thru 10. No where[sic] in the record shown where Detective Quinn had witness to come forward to make identification nor say they seen anything of use. J.T. Moore information does not prove anything that would cause an arrest. Specifically no one said they could identify anyone.

6. Whether Appellant was denied due process and right to effective assistance of counsel on appeal, when counsel fails to raise an obvious and meritorious identification procedures[sic] and, improper police procedure issues on appeal. violations[sic] of 5th, 6th, and 14th Amendments of the U.S. Constutytion.

   Supporting facts: The identification process was questionable; and Appellant's ability to challenge it was crucial parts of the defense strategy.

7. Whether Appellant was denied due process and right to effective assistance of counsel on appeal whe[sic] counsel fail[sic] to assign an error according to the N.C.R. report, fingerprint examination is not supported by peer-reviewed, as well as D.N.A. and is unreliable evidence, and unreliable testimony.

   Supporting facts: Appellate counsel failed to assign an error that D.N.A. and or fingerprint examination is not supported by peer review. Published studies establishing its scientific bases and validity and lacks rigorous protocols to guide experts subjective assessments of matching characteristics. [A]dditionally, the field lacks professional standards, making it difficult to determine with adequate reliability that and[sic] D.N.A. or fingerprints left any type of impression that matched to any of the Defendant's.

> 8. Whether Appellant's cumulative errors deprive him of a fair trial in violation of his right under the 5th, 6th, and 14th Amendment[sic] to the U.S. Constitution and the corresponding provisions of the Ohio Constitution.
>
> Supporting facts: The aggregated effect of multiple error[sic], such as sleeping juror, failing to object to such[sic] as sleeping juror, failing to provide fair trial effective assistance, perjured testimony, improper police procedure issues, among many other things such as deficient performance with the effect of multiple errors.

ECF Dkt. #1 at 5-12; ECF Dkt. #1-1 at 1-2. On June 17, 2016, Respondent filed an Answer/Return of Writ. ECF Dkt. #11. On September 6, 2016, Petitioner filed a Traverse. ECF Dkt. #15.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not currently at issue in this case.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th

Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the

procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

## **V**. **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced

because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI. LAW AND ANALYSIS

### A. GROUNDS FOR RELIEF NUMBERS 1, 2, 3, 4 -PROCEDURAL DEFAULT

Respondent first asserts that the Court should decline to review Petitioner's first, second, third and fourth grounds for relief because he has procedurally defaulted these grounds by failing to raise them before the Supreme Court of Ohio. ECF Dkt. #11 at 17-18.

In his first two grounds of relief before this Court, Petitioner presents issues relating to a sleeping juror during his trial, alleging trial court error and ineffective assistance of counsel. ECF Dkt. #1 at 1-7. In his third and fourth grounds for relief, Petitioner asserts trial court error by failing to merge all counts as allied offenses and by denying Petitioner's motion to require the prosecution to turn over a complete copy of its file. *Id*. at 8-11.

Petitioner raised these four grounds for relief in his Ohio appellate brief as assignments of error numbers one, two, three and five, respectively. ECF Dkt. #11-1 at 76-77. However, in his memorandum in support of jurisdiction before the Supreme Court of Ohio, Petitioner failed to raise any of these four grounds for relief. *Id*. at 160. The undersigned recommends that the Court find that Petitioner has therefore procedurally defaulted these grounds. A federal ground for relief is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Further, a failure to present a federal habeas claim to a state's highest court for discretionary review, when that review is part of the

-13-

ordinary appellate review procedure, results in a procedural default of that claim. *Id*. at 847-848.

Petitioner can escape this procedural bar if he presents cause to excuse his failure to present these claims to the Supreme Court of Ohio and prejudice arising therefrom, or if he shows that a fundamental miscarriage of justice will result from failing to review the claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner presents no cause to excuse his failure to raise these claims before the Supreme Court of Ohio, and he fails to establish resulting prejudice or a fundamental miscarriage of justice. In his Traverse, Petitioner asserts that he presented these issues in his sole assignment of error on direct appeal and he explains that he cited to the operative facts concerning the sleeping juror, referred to caselaw including *Strickland v. Washington,* 466 U.S. 668 (1984), and he asserted that he raised violations of his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. ECF Dkt. #15 at 2-3. However, Petitioner citation is to his direct appeal where he did raise these grounds for relief as assignments of error. He did not raise these grounds for relief before the Supreme Court of Ohio or in his Rule 26(B) application. Consequently, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Grounds for Relief Numbers 1, 2, 3, and 4 and has not shown cause and/or prejudice or a resulting fundamental miscarriage of justice.

### B.     GROUND FOR RELIEF NUMBER 5 - PROCEDURAL DEFAULT

In Ground for Relief Number 5, Petitioner asserts that he was prejudiced by the admission of perjured testimony from State Witness James T. Moore in violation of his federal constitutional and state constitutional rights. ECF Dkt. #1-1 at 1. Respondent contends that Petitioner has procedurally defaulted Ground for Relief Number 5 because he failed to raise this issue before the Ohio appellate court. ECF Dkt. #11 at 18-20.

The undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief. While Petitioner did present this issue to the Supreme Court of Ohio in his appeal from the Ohio appellate court's ruling on his direct appeal, he did not raise this claim to the Ohio appellate court. ECF Dkt. #11-1 at 76-77, 160. Again, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Moreover, Ohio law

states that res judicata bars issues not raised on direct appeal. *Smith v. Warden*, No. 1:09-cv-251, 2010 WL 3075166, at *14 (S.D. Ohio Apr. 14, 2010), citing *State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994); *State v. Perry*, 10 Ohio St.2d 175, 175-176, 226 N.E.2d 104, 105-106. The Sixth Circuit Court of Appeals has recognized Ohio's law of res judicata and found that it meets the *Maupin* factors. *Smith v. Warden*, 2010 WL 3075166, at *14, citing *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) and *Rust v. Zent*, 17 F.3d 155, 160-161 (6th Cir. 1994). By not affording the Ohio appellate court the opportunity to review this claim, res judicata bars the Ohio Supreme Court from reviewing the issue. Thus, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground for Relief Number 5.

Further, as explained above, Petitioner has failed to present sufficient cause and/or prejudice to excuse the procedural default of this Ground for Relief and has shown no fundamental miscarriage of justice. Petitioner asserts in his Traverse that he did not have sufficient legal access to the law library or to meet with a legal assistant. ECF Dkt. #15 at 5. However, Plaintiff may not rely upon his incarceration, his pro se status, difficulty finding counsel, and his limited education to establish cause. Such claims have been squarely addressed and rejected by the Sixth Circuit. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)("First, Bonilla's pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. *See Hannah v. Conley*, 49 F.3d 1193, 1197 ((6th Cir.1995)). Second, Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default. *See id.* . . . Fourth, the fact that Bonilla's time in the prison law library was limited to four hours per week was insufficient to establish cause to excuse his procedural default. Additionally, Bonilla does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from filing a timely notice of appeal.").

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground for Relief Number 5.

### C.    GROUND FOR RELIEF NUMBER 6- MERITS REVIEW

In his sixth ground for relief, Petitioner contends that he was denied due process and the right to the effective assistance of counsel on appeal because counsel failed to raise "an obvious and

meritorious identification procedure, and improper police procedure issues on appeal." ECF Dkt. #1-1 at 1. In support of his assertion, Petitioner contends that the identification procedure was questionable and his challenge to that procedure was crucial to his defense strategy. *Id.*

Due process requires that eyewitness identification evidence be suppressed "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." P*erry v. New Hampshire*, 565 U.S. 228, 238 (2012). A pretrial identification violates due process when: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972).

In his federal habeas corpus petition and in his Traverse, Petitioner provides no detail on the identification procedure or procedures that he is challenging and he fails to assert how said procedures violated due process. ECF Dkt. #1; ECF Dkt. #1-1; ECF Dkt. #15. In his Traverse, Petitioner merely refers to "Doc. 11. Pg. 20" and nothing more. The undersigned notes that Petitioner did raise the ineffectiveness of appellate counsel in his memorandum in support of jurisdiction to the Supreme Court of Ohio, but again, he failed to provide sufficient detail as to the ineffectiveness. ECF Dkt. #11-1 at 160. He contended that it was crucial at trial to identify the "persons who had done the shooting, and attacking the reliability of the identification was a key component in Appellant's defense strategy. No possible strategy at trial or on appeal can justify disregarding this issue, and prejudice must be found where the non identification of the photo array or at trial went to the core of the Defense's theory yet went uncontested at trial and on direct appeal." *Id.* at 166.

As Respondent points out, no witnesses identified the perpetrators' faces as they testified only as to the clothes that the perpetrators were wearing. ECF Dkt. #11 at 20, citing ECF Dkt. #12-4; see also ECF Dkt. #12-2 at 317. And defense counsel cross-examined said witnesses, asking one witness how dark it was when she saw two young black males running toward a van after the shooting, asking her if she wore glasses or had them on when she observed the males running, and confirming the witness' statement to police that the perpetrator could not be Petitioner based upon the build of the males that she saw running. ECF Dkt. #12-2 at 339-354.

Without further detail by Petitioner concerning the identification procedures about which he complains, how said procedure or procedures violated his federal constitutional rights, and how trial and appellate counsel were ineffective concerning said procedures, the undersigned recommends that the Court decline Ground for Relief Number 6.

### D.     **GROUND FOR RELIEF NUMBER 7 - MERITS REVIEW**

Petitioner asserts in Ground for Relief Number 7 that his due process rights and right to the effective assistance of counsel were violated when counsel failed to challenge the fingerprint and DNA evidence as unreliable and unacceptable because it was not based upon peer review. ECF Dkt. #1-1 at 1.

Again, Petitioner provides little detail concerning this ground for relief. He does not identify the fingerprint or particular DNA evidence that he is challenging. At trial, Detective Lenhardt, the exterior crime scene investigator, testified that he made no effort to try to process the outdoor crime scene for fingerprints because of the monsoon-like rains that evening and because it did not appear that there were any surfaces that the perpetrators would have touched. ECF Dkt. #12-3 at 170-174. He further testified that he did recover a 9 mm cartridge and casings and .40 caliber casings and preserved them for DNA analysis, but it was his experience that it is not common to recover DNA evidence from bullets or fragments once they have been fired from the gun due to the heat generated in firing a weapon. *Id*. at 171-174. He testified that he submitted them for analysis nonetheless. *Id*. He also submitted for DNA analysis bullets and fragments from the two children who were shot, and he processed the van that the witnesses said the perpetrator ran into, removing a red and black hat, three cell phones, swabs taken from inside the van, photographs found in the van, two hoodies, three shoes, and court documents and receipts for DNA analysis. *Id*. at 183-187. He also submitted items from Petitioner's residence pursuant to a search warrant. *Id*. at 190-193.

Respondent asserts that the State of Ohio did not rely upon any fingerprint evidence at trial and therefore no constitutional violation could have occurred concerning such evidence. As to DNA evidence, Respondent asserts that Petitioner has not shown that he would likely have had a favorable outcome on appeal had his appellate counsel presented a challenge to its reliability or validity. ECF Dkt. #11 at 22.

The undersigned recommends that the Court find that Petitioner's challenge to fingerprint evidence is lacking in detail and appears not to have been used at trial. The undersigned recommends the same as to Petitioner's challenge to the DNA evidence and appellate counsel's alleged ineffectiveness in failing to challenge it on appeal. Petitioner does not identify the particular DNA evidence that he challenges or that his appellate counsel should have raised on appeal, and he fails to show how the lack of such a challenge would have changed the outcome of his appeal. Without more, the undersigned recommends that the Court find that Petitioner's Ground for Relief Number 7 is without merit. Petitioner raised in his memorandum in support of jurisdiction before the Supreme Court of Ohio that at no time in the trial did the State bring forth evidence to prove that any of the items tested belonged to him or placed him at the scene. ECF Dkt. #11-1 at 167. However, in the same assertion, Petitioner notes that testimony of Mr. Moore, the prosecution witness, accomplished these facts. *Id.* And while Petitioner goes on in his memorandum in support of jurisdiction to assert that the record would reflect that Mr. Moore could not place Petitioner at the crime scene, the jury obviously believed otherwise and found him guilty of all of the charges. *Id.* at 167-168. As Respondent points out, the DNA evidence played a very small role in the trial and the State's primary witness was Mr. Moore, who testified that he, Petitioner, and Mr. Jones were members of the Bloods street gang, Moore was driving the van on the night of the shooting, and Petitioner was one of the two men responsible for the shooting, which was intended for a member of the Crips, a rival gang. *Jennings*, 2015 WL 223882, at *2. Accordingly, even if Petitioner could prove error in allowing the DNA evidence or deficient performance of appellate counsel in failing to raise this issue on appeal, he has failed to prove resulting prejudice, i.e., that the outcome of his appeal would have been different.

### E. GROUND FOR RELIEF NUMBER 8

In Ground for Relief Number 8, Petitioner asserts that cumulative errors deprived him of a fair trial in violation of his federal constitutional rights. ECF Dkt. #1-1 at 2. He contends that the sleeping juror, counsel's ineffectiveness, perjured testimony and improper police procedures combined to deprive him of a fair trial. *Id.*

The undersigned recommends that the Court find that this Ground for Relief is not cognizable before this Court. The Sixth Circuit has held that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

### VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find that Petitioner's Grounds for Relief Numbers 1, 2, 3, 4, and 5 are procedurally defaulted, Grounds for Relief Numbers 6 and 7 are lacking in sufficient detail to review and are otherwise without merit, and Ground for Relief Number 8 is not cognizable in federal habeas corpus. Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice. ECF Dkt. #s, 1, 1-1.

DATE: October 18, 2017  */s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).